# 14-1993-cv

## United States Court of Appeals for the Second Circuit

_____

**OLIVER SALMON,**

                **Plaintiff-Appellant,**

v.

**THOMAS BLESSER, individually and in his
official capacity as an Albany, New York
Police Officer, CITY OF ALBANY POLICE
DEPARTMENT and THE CITY OF ALBANY,
"JOHN DOE1," and "JOHN DOE2," (the names
being fictitious but intended to represent one or
more employees of the CITY OF ALBANY POLICE
DEPARTMENT),**

                **Defendants-Appellees.**

_____

**On Appeal from the United States District Court
for the Northern District of New York**

_____

## BRIEF FOR PLAINTIFF-APPELLANT

---

Dated: October 3, 2014          **KEITH F. SCHOCKMEL**
                   **Attorney for Plaintiff-Appellant**
                   4 Atrium Drive, Suite 290
                   Albany, New York  12205
                   (518) 435-9360

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………….…………2

JURISDICTIONAL STATEMENT...………………………………………...….3

QUESTIONS PRESENTED …....……………………………………..………4

STATEMENT OF THE CASE …………………………………………………..4

FACTS………………….…………………………………………….………..6

STANDARD OF REVIEW……………..…………………………………...…..…7

SUMMARY OF ARGUMENT……………..………………………..……...……8

ARGUMENT

    POINT I
    THE COMPLAINT SUFFICIENTLY
    ALLEGES AN UNCONSTITUTIONAL SEIZURE ………………….......10

    POINT II
    THE FIRST AMENDMENT PROTECTS
    PLAINTIFF'S RIGHT TO REMAIN IN THE
    WAITING AREA OF THE CLERK'S OFFICE …………………….……13

    POINT III
    THE COMPLAINT ASSERTS SUFFICIENTLY EXTREME AND
    OUTRAGEOUS BEHAVIOR TO SUPPORT A CLAIM OF
    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ………......15

CONCLUSION……………………………………………………………………...17

# TABLE OF AUTHORITIES

## CASES                                                                                   PAGE

*Chicago v Morales*, 527U.S. 41 (1999)……………………..……………….………14

*Harris v. Mills,* 572 F.3d 66 (2d Cir.2009)……………….……………….....…....7

*Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993)…………….………………16

*Nakahata v. New York-Presbyterian Health Care System, Inc.* 723 F.3d 192

    (2d Cir. 2013).……………………………………………….……………………7

*Richmond Newspapers, Inc. v Virginia*, 448 U.S. 555 (1980) …………………..14

*Sheppard v. Beerman*, 18 F. 3d 147 (2d Cir. 1994).…………………………....…10

*United States v. Freeman*, 735 F.3d 92 (2d Cir. 2013)……………....………….12

*Zellner v. Summerlin,* 494 F.3d 344 (2d Cir. 2007)……………….……………..11

## UNITED STATES CONSTITUTION

First Amendment ………………………….....…………….………..passim

Fourth Amendment ………………………………………….………..passim

## FEDERAL STATUTES

28 U.S.C. § 1291 ……………………………………………….……..……3

28 U.S.C. § 1331………………………………………………….………..3

28 U.S.C. § 1343 …………………………………………………….………3

42 U.S.C. § 1983 ……………………………………..…………….……3, 5

# JURISDICTIONAL STATEMENT

Plaintiff commenced his action under 42 U.S.C. § 1983 alleging a violation of his rights under the First and Fourth Amendments to the United States Constitution. The District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

Plaintiff appeals the dismissal of his complaint for failure to state a cause of action pursuant to FRCP 12(b)(6). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. The District Court issued a Memorandum Decision and Order dismissing the complaint, with leave to amend portions, on May 12, 2014. Judgment dismissing the complaint was docketed May 29, 2014 and this appeal was appeal was timely filed pursuant to Federal Rules of Appellate Procedure 4(a)(1)(A) on June 3, 2014.

## QUESTIONS PRESENTED

1.     Where a police officer physically grabs an individual and removes him from a public building, has that individual been "seized" within the meaning of the Fourth Amendment?

2.     Does the First Amendment protect an individual's right to remain in a designated waiting area while conducting business at a Court Clerk's office?

3.     Where a police officer who has twisted the arm of a peaceful, non-resisting individual behind his back been told by that individual that the officer is hurting the person responds by applying more force, causing permanent injury, is that officer's conduct sufficiently extreme or outrageous to support a claim of intentional infliction of emotional distress?

## STATEMENT OF THE CASE

This matter arises from an interaction between defendant-appellee Thomas Blesser, an Albany City Police Officer, and plaintiff-appellant Oliver Salmon. Mr. Salmon had come with his attorney to the Albany City Court Clerk's office to review a file. As only attorneys were permitted inside the office, Mr. Salmon was waiting in an area to which he had been directed by the Clerk. In response to Blesser's inquiry as to which courtroom he was supposed to be in, Salmon responded that he was at the Clerk's office with his attorney, who was inside. He

4

explained that the Clerk had told him to wait in that area, and offered to summon his attorney to verify. Blesser replied that he would get the attorney, and Mr. Salmon stepped aside to permit him to approach the Clerk's window. Rather than speaking to the Clerk or Mr. Salmon's attorney, Blesser grabbed Oliver Salmon and twisted his arm behind his back. When Mr. Salmon complained that he was hurting him, Blesser pushed it further up behind his back, causing permanent injury. Blesser than threw Oliver Salmon out the door and threatened him with arrest if he came back in the building.

Suit was filed pursuant to 42 U.S.C. § 1983 alleging, among other things, that Blesser's actions constituted an illegal seizure in violation of the Fourth Amendment and a deprivation of Oliver Salmon's First Amendment right to be in the public area adjacent to the Clerk's office. Defendants moved pursuant to FRCP 12(b)(6) to dismiss the complaint for failure to state a claim.

The District Court for the Northern District of New York (D'Agostino, J.) dismissed complaint in its entirety, ruling that Blesser's actions did not constitute a seizure within the meaning of the Fourth Amendment, that Oliver Salmon did not have a constitutionally protected right to be in that area, and that Blesser's injuring of Salmon could not support a claim for intentional infliction of emotional distress. This appeal follows.

5

# FACTS

The following facts are those alleged in the complaint (Appx.5-13),[1] which was dismissed by the District Court for failure to state a claim upon which relief can be granted (Appx.20-40). On September 1, 2010, plaintiff-appellant Oliver Salmon visited the Albany City Court Clerk's office with his attorney to examine a file. Informed by the Clerk that only attorneys were permitted inside the office proper, Mr. Salmon was directed to a specified area to wait (Appx.7).

While waiting Mr. Salmon overheard defendant-appellee Albany Police Officer Thomas Blesser direct two individuals to go into the courtrooms in which they belonged (Appx.7). Blesser approached Salmon and asked him in which courtroom he was supposed to be. Oliver Salmon replied that he was not there for a court appearance but was with his attorney for business at the Clerk's office. Mr. Salmon explained that his attorney was inside the office and that he had been told by the Clerk to wait in that area. He offered to call his attorney (by knocking on the window) to explain, but Blesser replied that he would get do so. Oliver Salmon stepped away from the Clerk's window to permit Blesser to knock on the window (Appx.8).

Rather than summoning the attorney, Blesser grabbed Oliver Salmon by the collar, violently twisted his arm up behind his back, and began shoving him toward

---

[1] Unless otherwise indicated, references in parentheses are to pages of the record contained in the Appendix.

the door.  Mr. Salmon complained that Blesser was hurting his arm; in response Blesser stated words to the effect, "I don't give a shit" and twisted it further up behind his back (Appx.8).  A second Albany City Police Officer, John Doe1, was present and observed all of Blesser's actions without coming to the aid of Oliver Salmon (cite Appx.8-9).  Blesser physically threw Oliver Salmon out of the building and told him that he would be arrested if he stepped back inside (Appx.9).  Oliver Salmon has sustained a permanent injury as a result of Blesser's twisting his arm (Appx.9).

## STANDARD OF REVIEW

This Court reviews a dismissal pursuant to FRCP 12(b)(6) for failure to state a claim *de novo*.  *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.2009).  In reviewing the sufficiency of the complaint, the Court is required accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Nakahata v. New York-Presbyterian Health Care System, Inc.* 723 F.3d 192, 197 (2d Cir. 2013).

## SUMMARY OF ARGUMENT

The District Court erred in dismissing the complaint on the ground that plaintiff had failed to adequately allege a seizure within the meaning of the Fourth Amendment.  The complaint asserts that Oliver Salmon was waiting, as directed by the Clerk, in a designated area while conducting business at the Albany City Court Clerk's office when, without warning or justification, defendant Thomas Blesser physically grabbed and bodily ejected him from the building.  The Court below concluded that inasmuch as Salmon was free to go anywhere else he wished (other than reenter the building), no seizure had occurred.  Implicit within the District Court's decision is the inference that Oliver Salmon was not permitted to be in that area and that Blesser was authorized to remove him.  This is an impermissible evaluation of the facts pleaded in the complaint and drawing of inferences in favor of defendants.

The District Court also erred in concluding that the complaint's assertion that Oliver Salmon's First Amendment rights were violated when he was removed from a public area while conducting business at the Albany City Clerk's office was insufficient for its failure to allege a denial of access to an ongoing judicial proceeding.  This is an unduly narrow interpretation of the First Amendment; it protects the right of an individual to remain peaceably in an area open to the public.

The District Court also erred in finding that Blesser's conduct in twisting Oliver Salmon's arm even further behind his back, causing permanent injury, upon Salmon's protest that he was hurting his arm, was not sufficiently extreme or outrageous to give rise to a cause of action for intentional infliction of emotional distress.  As the complaint asserts that Salmon was polite and respectful at all times, was not aware that Blesser wished him to leave the area and offered no resistance, Blesser's initial attack was unwarranted.  The violent increase in pressure on Salmon's arm upon Salmon's complaint of pain, coupled with Blesser's statement that he didn't care if he was injuring Salmon, could reasonably be found to be the extreme and outrageous behavior required to state a claim for intentional infliction of emotional distress.

# ARGUMENT

## POINT I

### THE COMPLAINT SUFFICIENTLY ALLEGES AN UNCONSTITUTIONAL SEIZURE.

**The District Court drew impermissible inferences.**

The complaint asserts that as Oliver Salmon was waiting in the area to which he had been directed by the Albany City Court Clerk while his attorney conducted business on his behalf, defendant Blesser "without warning, grabbed plaintiff by the collar . . . twisted his arm up behind his back . . . threw plaintiff out the door and threatened [him] with arrest if he [reentered]" (Appx.8-9). The District Court found that Blesser's actions "did not constitute a seizure under the Fourth Amendment" as "Blesser was merely attempting to get plaintiff to leave the courthouse and. . . [once ejected, Mr. Salmon] was not prevented from going anywhere he wanted, except back [inside]" (Appx.30). In arriving at this conclusion the Court found the allegations of the instant matter "very similar to those in *Sheppard v. Beerman* . . . [where] a fired law clerk . . . [was] removed [ ] from the judge's chamber's" (Appx.30).

There is a critical distinction, however. In *Sheppard* the plaintiff had been fired by the judge in question and could not have reasonably believed he had the right to remain in chambers, an area not generally open to the public. *Sheppard v. Beerman*, 18 F. 3d 147 (2d Cir. 1994), cert. denied 513 U.S. 816 (1994). Oliver

10

Salmon, on the other hand, was in an area open to the public, conducting business that required that he be in that specific area and did have permission to be there; he had explicitly been told to remain in that very space (Appx.7).

Implicit in the District Court's decision is the inference that Blesser was authorized to remove Oliver Salmon from the Albany City Court building ("Defendant Blesser was merely attempting to get Plaintiff to leave the courthouse") (Appx.30). This determination must stem from either the conclusion that Salmon was in a place in which he was not allowed or that Blesser had the authority to remove any individual he chose.

As noted above, the complaint asserts that Oliver Salmon was allowed to be there: he was in the place where he had been told to wait (Appx.7). Thus, the District Court's conclusion that Blesser was authorized to grab Oliver Salmon and forcibly throw him out the door is necessarily predicated upon the supposition that defendant Thomas Blesser had unfettered discretion to eject whoever he chose. As no such allegation was stated nor could reasonably be inferred from the complaint, this assessment of Blesser's authority was a finding of fact by the District Court. This was error. See, e.g., *Zellner v. Summerlin,* 494 F.3d 344, 371 (2d Cir. 2007).

Construing the allegations in the light most favorable to plaintiff, the Court must assume that Blesser did not have such *carte blanche* authority, and ascertain

11

whether the complaint sufficiently asserts a Fourth Amendment seizure under those circumstances.

**Oliver Salmon's freedom of movement was restrained.**

The District Court, reasoning that after being thrown from the building, Oliver Salmon "was released and was not prevented from going anywhere he wanted, except back into the courthouse," and noting that none of "his personal belongings were confiscated" concluded that the encounter between Salmon and Blesser did not rise to the level of a Fourth Amendment seizure (Appx.30). This is an impermissibly narrow interpretation.

> A seizure triggering the protection of the Fourth Amendment occurs once an officer has "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen."

*United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013). Oliver Salmon's liberty was certainly restrained when Blesser grabbed him by the collar and twisted his arm behind his back. At that moment he was seized within the meaning of the Fourth Amendment. That Blesser released him after throwing him from building is not germane—the seizure had already occurred.

As the District Court found that no seizure of Oliver Salmon had taken place, it did not address whether the Fourth Amendment was implicated (Appx.31).

12

## POINT II

## THE FIRST AMENDMENT PROTECTS PLAINTIFF'S RIGHT TO REMAIN IN THE WAITING AREA OF THE CLERK'S OFFICE.

The complaint in this matter alleges that Oliver Salmon was conducting business with his attorney at the Albany City Clerk's office when he was thrown from the building by defendant Blesser (Appx.7-8). A violation of plaintiff's First Amendment rights is claimed as a result (Appx.11-12). The District Court, in dismissing the complaint, found "Plaintiff has not alleged that he was engaged in any protected activity under the First Amendment when he was escorted from the courthouse" (Appx.32). With respect to the argument that Blesser's interference with plaintiff's business at the Clerk's office impinged his First Amendment rights, the Court found that plaintiff was impermissibly attempting to amend his cause of action to assert a denial of right of access claim (Appx.32-33). The District Court went on to rule that a right of access claim would nevertheless be meritless, as there was no judicial proceeding taking place (Appx.34).

It is submitted that this is an unduly restrictive interpretation of the First Amendment. While right of access claims are perhaps most often made within the context of the denial of access to judicial proceedings, courts have not limited them to such. Oliver Salmon was at the City Court Clerk's office to examine a file: he

13

wished to review the information contained in it.  This is an activity protected by the amendment.  As the Supreme Court noted,

> [the] First Amendment [guarantees the] right to receive information and ideas . . . a right to gather information.

*Richmond Newspapers, Inc. v Virginia*, 448 U.S. 555, 576 (1980) (internal citations and quotations omitted).

Moreover, the Supreme Court has not made the protections of the First Amendment contingent upon the nature of the business or activity of the actor:

> The right of access to places traditionally open to the public . . . may be seen as assured by the amalgam of the First Amendment guarantees of speech and press . . . People assemble in public places not only to speak or to take action, but also to listen, observe, and learn; indeed, they may assembl[e] for *any lawful purpose*

*Id*. at 577-578 (internal citations, footnote, and quotations omitted, emphasis added).

Oliver Salmon was in a public place for a lawful purpose.  His right to remain in that place is guaranteed by the Constitution.

> Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is a part of our heritage

*Chicago v Morales*, 527U.S. 41, 54 (1999) (internal quotations omitted).

The complaint asserts that defendant Blesser, without justification, denied Oliver Salmon his right of access to the public waiting area of the Albany City Court Clerk's office—a violation of his First Amendment rights.

## POINT III

### THE COMPLAINT ASSERTS SUFFICIENTLY EXTREME AND OUTRAGEOUS BEHAVIOR TO SUPPORT A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The complaint alleges that Thomas Blesser, upon being apprised that his twisting of Oliver Salmon's arm was hurting him, stated, "I don't give a shit" and applied even more force, causing permanent damage. Salmon was not disruptive, resistant in any way, nor even aware that Blesser wished him to leave the area (Appx.7-10). While the initial attack on Salmon was egregious enough, the vicious further twisting was not only unnecessary, but can reasonably be inferred as either intended to permanently injure Oliver Salmon or, at the very least, representing a callous disregard of the likelihood of causing permanent damage. This malicious, unnecessary act of brutality, coupled with Blesser's admission that he did not care that he was causing injury, falls well within the type of conduct a cause of action for intentional infliction of emotional distress is designed to address.

Without a doubt, a claim of this nature is difficult to prove; the requirements are rigorous, consisting of four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe

emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress" *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). In practice, courts focus upon the complained of conduct to ascertain whether it is of such an extreme and outrageous character as to give rise to the cause of action. *Id.*

As pleaded, Thomas Blesser's behavior does meet these criteria. Oliver Salmon was quietly minding his own business in a public area, waiting where he had been told to wait by the Albany City Court Clerk when Thomas Blesser attacked him with neither reason nor warning (Appx.7-9). In fact, Blesser induced Salmon to let down his guard by telling him that he was going to speak with Mr. Salmon's attorney. When Salmon stepped aside to allow Blesser to pass, Blesser attacked him and twisted his arm up behind his back (Appx.8, ¶¶ 19-23). When Salmon protested that Blesser was hurting him, Blesser twisted the arm harder, causing permanent damage (Appx.8-9).

Thomas Blesser's unprovoked assault upon a peaceful person minding his own business in a public place, which he intensified upon learning was causing pain, while acknowledging a disregard for the fact that he was causing damage, is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell* at 122.

16

## CONCLUSION

For the foregoing reasons, it is respectfully asserted that this court should reverse the District Court's dismissal of the complaint in this matter.

Dated:    Albany, New York
          October 3, 2014

                                        Respectfully submitted,

                                        KEITH F. SCHOCKMEL

                                        Attorney for Plaintiff-Appellant
                                        4 Atrium Drive, Suite 290
                                        Albany, New York  12205
                                        (518) 435-9360

# 14-1993-cv

### United States Court of Appeals for the Second Circuit

───────────────────────────────

**OLIVER SALMON,**

                              **Plaintiff-Appellant,**

v.

**THOMAS BLESSER, individually and in his official capacity as an Albany, New York Police Officer, CITY OF ALBANY POLICE DEPARTMENT and THE CITY OF ALBANY, "JOHN DOE1," and "JOHN DOE2," (the names being fictitious but intended to represent one or more employees of the CITY OF ALBANY POLICE DEPARTMENT),**

                              **Defendants-Appellees.**

───────────────────────────────

**On Appeal from the United States District Court for the Northern District of New York**

───────────────────────────────

**BRIEF FOR PLAINTIFF-APPELLANT**

---

    The undersigned attorney, Keith F. Schockmel, hereby certifies that this brief complies with the type-volume limitations of FRAP 32(a)(7). According to the word processing system used by this office, this brief, exclusive of the title page, table of contents, table of citations, statement with respect to oral argument, any addendum containing statutes, rules or regulations, and any certificates of counsel, contains 3165 words.

                                                  _____/S/_____
                                                  KEITH F. SCHOCKMEL
                                                  Attorney for Plaintiffs-Appellees
                                                  4 Atrium Drive, Suite 290
                                                  Albany, New York  12205
                                                  (518) 435-9360